Case No. 24-3195

**United States Court of Appeals
for the Ninth Circuit**

AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE,
*Plaintiff and Appellant*,

v.

COUNTY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO
BOARD OF SUPERVISORS, and INLAND COUNTIES EMERGENCY
MEDICAL AGENCY,
*Defendants and Appellees*;

and

CONSOLIDATED FIRE AGENCIES
*Real Party in Interest.*

On Appeal from The United States District Court,
Central District of California,
Case No. 5:24-cv-00267-KK-SP,
Hon. Kenly Kiya Kato

**APPELLANT'S REPLY BRIEF**

**LARSON LLP**
Stephen G. Larson
*slarson@larsonllp.com*
Jonathan E. Phillips
*jphillips@larsonllp.com*
Mehrunisa Ranjha
*mranjha@larsonllp.com*
Benjamin Falstein
*bfalstein@larsonllp.com*
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Tel: (213) 436-4888; Fax: (213) 623-2000

*Attorneys for Plaintiff and Appellant
American Medical Response of Inland Empire*

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.......................................................................2

TABLE OF AUTHORITIES ..............................................................4

I. INTRODUCTION ...........................................................................6

II. ARGUMENT ..................................................................................9

    A.    County Defendants' Decision to Disregard the State-Mandated Process for Exclusive EMS Contracts Gives Rise to Antitrust Liability ................................................................................9

        1.    The EMS Act Is Not an Unbounded Authorization for County Defendants to Restrain Competition However They Deem Fit ............................................................9

        2.    County Defendants Chose to Abandon the State-Authorized Process and Instead Award the Exclusive EMS Contract Pursuant to the County's Own Local Policies ............................................................................11

        3.    County Defendants' Reliance on *Omni, Llewelyn*, and *Boone* Is Misplaced ...............................................15

        4.    There Is No Question That County Defendants Completely Disregarded the RFP ..............................20

            (a)    The State Authority's Approval of the RFP, and Adherence Thereto, Is Mandatory Under the EMS Act...............................................21

            (b)    County Defendants' Contract Award to CONFIRE Cannot Be Reconciled with the Text of the RFP ...........23

    B.    CONFIRE's Arguments Are Also Unavailing...................................24

        1.    County Defendants' Actions Are Not Entitled To *Parker* Immunity.......................................................25

            (a)    CONFIRE's Arguments Regarding the "Purpose and Application" of the *Parker* Doctrine Are Unavailing.......................................................25

(b)   CONFIRE's Attempt to Carve Out a Broad
Exception to Section 1797.224 For Fire
Departments Finds No Support in the EMS Act ............28

2.   AMR Has Properly Alleged An Antitrust Injury......................31

III. CONCLUSION...................................................................................36

CERTIFICATE OF COMPLIANCE........................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A-1 Ambulance Service, Inc. v. County of Monterey*
90 F.3d 333 (9th Cir. 1996) ............................................................32

*Boone v. Redevelopment Agency of City of San Jose,*
841 F.2d 886 (9th Cir. 1988) ....................................................*passim*

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.,*
810 F.2d 869 (9th Cir. 1987) ...............................................17, 18, 19

*City of Columbia v. Omni Outdoor Advert., Inc.,*
499 U.S. 365 (1991)......................................................15, 16, 17, 27

*Cmty. Commc'ns Co. v. City of Boulder, Colo.,*
455 U.S. 40 (1982)...........................................................................10, 11

*Connecticut Nat. Bank v. Germain,*
503 U.S. 249 (1992)...........................................................................29

*Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.,*
99 F.3d 937 (9th Cir. 1996) .........................................................20, 28

*Deak-Perera Hawaii, Inc. v. Department of Transp.,*
745 F.2d 1281 (9th Cir. 1984) ......................................................18

*Electrical Inspectors, Inc. v. Village of East Hills,*
320 F.3d 110 (2d Cir. 2003) ..........................................................13

*Llewellyn v. Crothers,*
765 F.2d 769 (9th Cir. 1985) ...............................................17, 19, 27

*Mercy-Peninsula Ambulance, Inc. v. San Mateo Cnty.,*
791 F.2d 755 (9th Cir. 1986) ...............................................14, 15, 32

*Miranda v. Anchondo,*
684 F.3d 844 (9th Cir. 2012) .......................................................29, 30

*N. Carolina State Bd. of Dental Examiners v. F.T.C.,*
574 U.S. 494 (2015)...........................................................................13

*Parker v. Brown*,
  317 U.S. 341 (1943)................................................................*passim*

*Sanders v. Brown*,
  504 F.3d 903 (9th Cir. 2007) ...............................................18, 19

*Security Fire Door Co. v. Los Angeles Cnty.*,
  484 F.2d 1028 (9th Cir. 1973) ..............................................33, 34

*Town of Hallie v. City of Eau Claire*,
  471 U.S. 34 (1985)..........................................................................15

*Traweek v. City & Cnty. of San Francisco*,
  920 F.2d 589 (9th Cir. 1990) .................................................9, 26, 27

**California Cases**

*Cnty. of San Bernardino v. City of San Bernardino*,
  15 Cal.4th 909 (1997) ...................................................................10

*Schaefer's Ambulance Serv. v. Cnty. of San Bernardino*,
  68 Cal.App.4th 581 (1998) ............................................................32

*Valley Med. Transp., Inc. v. Apple Valley Fire Prot. Dist.*,
  17 Cal.4th 747 (1998) ....................................................................32

**California Statutes**

Health and Safety Code
  § 1797.224....................................................................*passim*
  § 1797.230.............................................................29, 30, 31

**Other Authorities**

California Assembly Journal, 2021-2022 Reg. Sess., No. 121 ..............31

# I.
# <u>INTRODUCTION</u>

Defendants and Appellees County of San Bernardino, the San Bernardino County Board of Supervisors, and the Inland Counties Emergency Medical Agency ("ICEMA") (collectively, "County Defendants") have confirmed in their Answering Brief that they acted entirely outside of and separate from the authority granted by the State of California when they awarded an exclusive ambulance services contract to Real Party in Interest and Appellee Consolidated Fire Agencies ("CONFIRE"). Indeed, County Defendants have doubled down on their remarkable position that, contrary to the plain language of California's Emergency Medical Services System and Prehospital Emergency Medical Care Personnel Act ("EMS Act"), they were *not* required to obtain the State's approval for a competitive process to choose the County's next exclusive ambulance provider and were *not* required to adhere to the competitive process the State did approve. Instead, County Defendants contend they could act as sovereigns in their own right—eschewing the State's clearly articulated and affirmatively expressed policy regarding EMS contracting in favor of the County's own local procurement policies—yet still having their anticompetitive conduct immunized under the doctrine established by *Parker v. Brown,* 317 U.S. 341 (1943).

This is not the law. Rather, as Plaintiff and Appellant American Medical Response of Inland Empire ("AMR") articulated in its Opening Brief, County

Defendants would only be entitled to *Parker* immunity if they were acting as subordinate entities of the State of California in accordance with the State's clearly articulated and affirmatively expressed policy. By instead affirmatively admitting they were proceeding *without state authority or approval*—and were instead granting CONFIRE an exclusive ambulance contract under their own purported authority—County Defendants have confirmed that their conduct is *not* entitled to state-action immunity.

CONFIRE's Answering Brief is even more astounding. In addition to making the same incorrect arguments as County Defendants, CONFIRE advances the novel argument that two recently-enacted sections of the EMS Act somehow permit counties to award exclusive ambulance contracts to a "fire agency" without employing a state-approved competitive process as required by Health and Safety Code, section 1797.224.[1] CONFIRE's argument is specious, as the two cited statutes in no way say what CONFIRE purports them to say. Indeed, these statutes—explicitly enacted to be *declaratory of existing law*—affirmatively state that they do *not* alter the existing requirements for a county to award fire agencies exclusive ambulance contracts under section 1797.224. CONFIRE's attempt to re-write the EMS Act is thus unavailing and divorced from the very law it cites.

---

[1] Unless otherwise noted, all further statutory references are to the California Health & Safety Code.

7

Finally, CONFIRE makes a half-hearted argument that County Defendants' conduct does not implicate antitrust concerns at all, and that AMR has failed to allege antitrust injury—thereby depriving AMR of standing to bring its antitrust claim. Not only does this argument ignore decades of jurisprudence and the EMS Act's own acknowledgment that exclusive ambulance services contracts do, in fact, trigger antitrust concerns, it is premised on a mischaracterization of the harm alleged in AMR's Complaint. The County is not the "consumer" the antitrust laws seek to protect nor the "purchaser" of ambulance services. Rather, the "consumers" who ultimately "purchase" ambulance services are the citizens of the County of San Bernardino—and the County was only permitted to impose a monopoly on those consumers *if* it did so pursuant to the State's clearly articulated and affirmatively expressed policy. Because County Defendants and CONFIRE all admit that the County instead acted on its own purported authority—rejecting the authority granted by the State—its anticompetitive actions run afoul of federal antitrust law.

In short, nothing in either Answering Brief excuses County Defendants' actions in awarding CONFIRE a monopoly over ambulance services entirely outside of the authority granted by the State of California. As such, the order dismissing AMR's antitrust cause of action should be reversed and the matter remanded to the trial court for consideration of that cause of action on the merits.

**II.**
**ARGUMENT**

**A.** **County Defendants' Decision to Disregard the State-Mandated Process for Exclusive EMS Contracts Gives Rise to Antitrust Liability**

**1.** **The EMS Act Is Not an Unbounded Authorization for County Defendants to Restrain Competition However They Deem Fit**

County Defendants and CONFIRE both emphasize the entirely unremarkable proposition that, through the EMS Act, "the California legislature explicitly authorizes the creation of exclusive operating areas and the awarding of exclusive ambulance contracts." (County Br., at 26; *see also* CONFIRE Br., at 21). But the State's authorization of exclusive contracting in the abstract is not the issue. Rather, the issue is that County Defendants were limited to acting *pursuant to* this authorization.

Whether a municipality's conduct will be shielded from antitrust liability first requires a determination of "whether the legislature authorized the challenged actions." *Traweek v. City & Cnty. of San Francisco*, 920 F.2d 589, 591 (9th Cir. 1990). Here, the "authorization" at issue is set forth in section 1797.224, which allows a local EMS agency to select an exclusive ambulance provider *only* on the condition that the local EMS agency first "develop[s] and submit[s] for approval to the [State Authority], as part of the local EMS plan, its competitive process for selecting providers." §1797.224. An exclusive provider may then only be selected "pursuant to the plan" approved by the California Emergency Medical Services

Authority ("State Authority"). *Id.* As such, the legislature's authorization of exclusive contracting is not an unbounded delegation of authority; it instead is limited to the mandatory procedures required by the EMS Act. *Id.*

The EMS Act "created a comprehensive system governing virtually every aspect of prehospital emergency medical services." *Cnty. of San Bernardino v. City of San Bernardino*, 15 Cal.4th 909, 915 (1997). The fact that the EMS Act contemplates exclusive contracting in general does not give County Defendants' carte blanche to award such contracts outside of this "comprehensive system." *Id.* Indeed, it is no coincidence that section 1797.224's requirement that exclusivity can only be conferred "pursuant to the plan" approved by the State Authority mirrors the United States Supreme Court's clear command that municipalities "could partake of the *Parker* exemption only to the extent that they acted *pursuant to* a clearly articulated and affirmatively expressed state policy." *Cmty. Commc'ns Co. v. City of Boulder, Colo.*, 455 U.S. 40, 54 (1982) (emphasis added); *see also Cnty. of San Bernardino*, 15 Cal.4th at 917-18 (explaining section 1797.224 "was necessary to immunize the agencies from liability under the United States Supreme Court's then-recent decision holding that local governments granting monopolies would not be exempt from antitrust laws unless they acted pursuant to 'clearly articulated and affirmatively expressed' state policy.") (citation omitted).

It follows, then, that any attempt to confer exclusivity *outside of* the process mandated under section 1797.224 would contravene the State's "clearly articulated" policy—thereby placing it outside the scope of state-action immunity. *See City of Boulder*, 455 U.S. at 56 ("Acceptance of such a proposition—that the general grant of power to enact ordinances necessarily implies state authorization to enact specific anticompetitive ordinances—would wholly eviscerate the concepts of 'clear articulation and affirmative expression' that our precedents require."). Put simply, yes, the EMS Act authorizes exclusive ambulance contracts; but County Defendants are not automatically immunized from antitrust liability if they expressly disavow and operate completely outside of that authority—which is what they did here.

### 2. County Defendants Chose to Abandon the State-Authorized Process and Instead Award the Exclusive EMS Contract Pursuant to the County's Own Local Policies

County Defendants published the RFP as their competitive process for selecting the County's new exclusive ambulance provider and, once approved by the State Authority, they were obligated to adhere to that process. §1797.224. But County Defendants didn't like the result of that process—i.e., AMR receiving the highest score and the RFP unambiguously requiring that only the highest-scoring bidder would receive the opportunity to negotiate a contract. (4-ER-706-707, §2.13). So, County Defendants realized the only way they could award the contract

to their politically-preferred provider, CONFIRE, would be to disavow the State-authorized RFP process altogether—which is precisely what they did.

First, County Defendants declared they could submit draft contracts from both AMR and CONFIRE to the Board, notwithstanding the RFP's express requirement to the contrary, because "the competitive terms approved [by] the State EMS Authority pursuant to H&S Code section 1797.224" purportedly did not "contravene *the exclusive jurisdiction of the county's board of supervisors*." (*Id.* at 844) (emphasis added). The Board then asserted that the County's locally-enacted procurement policies, "County Policy 1106 and County Policy 1104," entitled the Board members to *independently* "perform the best value evaluation" when determining which contract to select—despite the State-approved RFP's mandate that only the highest-scoring bidder would be selected, and despite the fact that the determination of "best value" was already accounted for in the exclusive criteria of the RFP. (3-ER-321, 138:7-13).

Rather than trying to explain away this express repudiation of the State's clearly articulated policy under section 1797.224, County Defendants have embraced it in their Answering Brief, doubling down on their objectively false assertions that "no advance approval of the competitive process under section 1797.224 is required" and that County Defendants instead *voluntarily* submitted the RFP to EMSA for "feedback" rather than approval. (County Br., at 41, 10).

12

Thus, County Defendants have confirmed their erroneous position that they have no obligation to operate within the regulatory framework required by the EMS Act.

Put differently, County Defendants have admitted that the contract award to CONFIRE was made pursuant to their own procurement policies rather than pursuant to the State's clearly articulated policy under section 1797.224. The problem with this argument, of course, is that, unlike the RFP, the County's local enactments were never approved by the State Authority—and thus County Defendants were admittedly acting *outside* the scope of the State's authorization. *Electrical Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 120 (2d Cir. 2003) ("[T]he principle is well established that a municipality may not fall back on its general police or "home-rule" powers to immunize anticompetitive regulations."). Indeed, County Defendants' reliance on their local procurement policies rather than the EMS Act is wholly inconsistent with the "'clear articulation' requirement," which has "the objective of ensuring that the policy at issue be one enacted *by the State itself*." *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 574 U.S. 494, 508 (2015) (emphasis added). County Defendants' local procurement policies—which are wholly extraneous to the State-approved RFP— are not policies sanctioned by the State. Bestowing state-action immunity on conduct that cannot actually be attributed to the State is simply inconsistent with the *Parker* doctrine.

Accordingly, County Defendants' and CONFIRE's extensive reliance on *Mercy-Peninsula Ambulance, Inc. v. San Mateo Cnty.*, 791 F.2d 755 (9th Cir. 1986) is altogether misplaced. Mercy argued that the county violated the Sherman Act by awarding exclusive contracts to other providers despite Mercy also being a qualified paramedic services provider. *Id.* at 756. Thus, the case turned on whether the county could implement "a selective certification and authorization system … which has the effect of excluding some providers"—an issue that AMR does not challenge here. *Id.* Critically, the Court noted that "the relevant contracts for medical services" awarded to Mercy's competitors "were based upon competitive bidding and have become part of the county's implementation of the EMS Act." *Id.*

This is where *Mercy* deviates from the instant case. Here, County Defendants were not implementing a competitive process *under the EMS Act*. To the contrary, they forewent the State-authorized competitive process altogether, opting instead to implement their own procurement policies as a pretext to award the contract to an inferior bidder. Accordingly, the *Mercy* Court's recognition that the EMS Act contemplates exclusive contracting for ambulance services— provided that such contracts are the result of a competitive process authorized thereunder—says nothing about County Defendants' decision to circumvent, rather than implement, the EMS Act.[2]

---

[2] *Mercy* is also inapposite because, as the Ninth Circuit explained, "the California

In essence, County Defendants seek to have their cake and eat it too. They claim that their conduct should be immunized under the state-action doctrine on the sole basis that the EMS Act authorizes exclusive contracting. Yet, County Defendants have repeatedly and unambiguously disavowed the very process that the Act itself compels. County Defendants' repudiation of the EMS Act's regulatory framework in favor of their own local enactments demonstrates the "real danger" envisioned by the Supreme Court "that [a municipality] will seek to further purely parochial public interests at the expense of more overriding state goals." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1985). It is precisely this danger that state-action immunity was intended to address by imposing "the requirement that the municipality act pursuant to a clearly articulated state policy." *Id.* Thus, by altogether circumventing the narrow authorization contained in the State's clearly articulated policy, County Defendants can no longer invoke the protections of *Parker* immunity.

### 3. County Defendants' Reliance on *Omni, Llewelyn*, and *Boone* Is Misplaced

In their Answering Brief, County Defendants assert that "[p]rocurement disputes are as old as procurement law and are properly left to the state courts,"

---

Legislature amended the EMS Act to include … §1797.224" which "became effective on January 1, 1985, after the institution of this suit." *Id.* at 756 n. 1. Thus, *Mercy* simply does not address whether a county can disregard the competitive process required under section 1797.224 while still retaining *Parker* immunity.

and that "state-action immunity is not forfeited by a violation of state law." (County Br., at 32.) In support of this proposition, County Defendants cite *Omni, Llewelyn*, and *Boone*. However, County Defendants' arguments not only misstate the Supreme Court and Ninth Circuit precedent they rely on, they also misconstrue AMR's theory in the Complaint.

In *Omni*, the Supreme Court considered and invalidated a "conspiracy" *exception* to the *Parker* doctrine. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 374 (1991). Prior to 1991, several Circuits held that *even when* the two-part test for state action has been satisfied, if there existed extraneous evidence proving that the public official was not acting pursuant to the direction or purposes of state statutory authority, but in furtherance of a conspiracy to restrain trade, the state action exemption may not apply. *Id.* The *Omni* Court stated that no such conspiracy exception existed because it was not supported by the language in *Parker*, and reaffirmed its rejection of any interpretation of the Sherman Act that would allow plaintiffs to "look behind" the actions of state sovereigns to base their claims solely on perceived extraneous conspiracies to restrain trade. *Id.* at 379. The Court reasoned that a conspiracy exception would swallow up the Parker rule since it was both inevitable and desirable that public officials agree to do what one or another group of private citizens urged. *Id.* at 375. The Court concluded that, with the possible exception of the state acting as a market participant rather than a

regulator, as long as an action qualifies as state action it is immunized. *Id.* at 379.

Here, AMR's Complaint did not allege an extraneous conspiracy on the part of public officials as an *exception* to immunity that Defendants would otherwise be entitled to under *Parker*, but rather that the conduct of the County did not meet the basic *Parker* immunity requirements in the first instance. County Defendants' reliance on *Omni* is thus unavailing.

Similarly unpersuasive are County Defendants' arguments regarding *Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985) and *Boone v. Redevelopment Agency of City of San Jose,* 841 F.2d 886, 890 (9th Cir. 1988). As set out in AMR's Opening Brief, the district court erred in relying on these cases to dismiss AMR's Complaint. Indeed, both cases are critically distinguishable because (1) *Llewellyn* concerned the actions of a *state* agency, rather than a municipal entity; and (2) both cases are factually inapposite.

County Defendants assert that it is immaterial that *Llewellyn* involved a state agency, rather than the action of a substate entity such as the County, because "the actions of a state agency must fit within the bounds of a clearly articulated and affirmatively expressed state policy to replace competition with regulation." (County Br., at 36.) In other words, County Defendants assert that the "clear articulation" test applies equally to state agencies. This is incorrect. As this Court explained in two cases decided after *Llewellyn—Charley's Taxi Radio Dispatch*

*Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 876 (9th Cir. 1987) and *Sanders v. Brown*, 504 F.3d 903, 916 (9th Cir. 2007)—the clear articulation test does *not* apply to state executives and agencies. In *Charley's Taxi*, this Court explained: "We conclude that state executives and executive agencies, like the state supreme court, are entitled to *Parker* immunity for actions taken pursuant to their constitutional or statutory authority, regardless of whether these particular actions or their anticompetitive effects were contemplated by the legislature. The requirement of specific authorization that we impose on cities to qualify for *Parker* immunity is not appropriate for the executive branch of the state government. When the state executives or executive agencies act within their lawful authority, their acts are those of the sovereign." *Charley's Taxi,* 810 F.2d at 876. Similarly, in *Sanders*, this Court explained that "in cases where the state, acting as a sovereign, imposes restraints on competition" the state is "immune from antitrust liability, regardless of whether the restraint in question would satisfy the *Midcal* test." *Sanders,* 504 F.3d at 915-16; *see also Deak-Perera Hawaii, Inc. v. Department of Transp.*, 745 F.2d 1281, 1283 (9th Cir. 1984) ("We see no reason why a state executive branch, when operating within its constitutional and statutory authority, should be deemed any less sovereign than a state legislature, or less entitled to deference under principles of federalism.").

Thus, County Defendants are wrong in their assertion that *Llewellyn* is not critically distinguishable from the instant case on the basis that it involved a *state* agency, rather than a substate entity. Indeed, while it preceded *Charley's Taxi* and *Sanders*, *Llewellyn* is consistent with those later decisions. The *Llewellyn* Court held that actions taken by the Oregon Workers' Compensation Department ("OWCD")—a state agency—were the "actions of the State of Oregon in its sovereign capacity." *Llewellyn*, 765 F.2d at 773. As such, the state agency did not forfeit the protection of *Parker* immunity "merely because the state's attempted exercise of its power is imperfect in execution under its own law." *Id.* at 774. Applying this standard, the Court found that the OWCD had authority under state law to take the specific action complained of—setting rates for chiropractic services—and even using this authority erroneously did not strip it of state-action immunity. *Id.* at 773.

The same cannot be said for the actions of *substate* entities such as County Defendants whose actions must be undertaken pursuant to a clearly articulated and affirmatively expressed state policy to be entitled to *Parker* immunity. And because the actions of County Defendants—overruling the results of a State-mandated competitive process to award a contract to an inferior, unqualified, and losing bidder—were nowhere authorized by the state of California, County Defendants' actions are not immunized.

19

Finally, as to *Boone*, County Defendants contend that, like *Boone*, this case concerns "attempt[s] to elevate [ ] claims of non-compliance with state law into antitrust liability." (County Br., at 37.) Not so. AMR's Complaint does not concern "non-compliance with state law" but rather, "whether the regulatory structure which has been adopted by the state has specifically authorized the conduct alleged to violate the Sherman Act." *Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*, 99 F.3d 937, 942 (9th Cir. 1996). The State never authorized County Defendants to circumvent the State-approved competitive process to award an exclusive ambulance contract to its politically-preferred provider. Accordingly, County Defendants have not merely acted in *excess* of the authority conferred by the state or imperfectly executed such authority; rather, their action was not undertaken pursuant to *any* state authority whatsoever.

### 4. There Is No Question That County Defendants Completely Disregarded the RFP

Finally, County Defendants argue that, even if anticompetitive conduct occurring outside the scope of the State's clearly articulated policy could give rise to antitrust liability, they nevertheless complied with the EMS Act and are therefore entitled to *Parker* immunity. However, even setting aside County Defendants' repeated admissions that they acted pursuant to the County's own local policies (as discussed *supra*), the plain text of the RFP and the EMS Act foreclose this contention.

### (a) The State Authority's Approval of the RFP, and Adherence Thereto, Is Mandatory Under the EMS Act

County Defendants offer a tortured interpretation of the EMS Act to contend that "no advance approval of the competitive process under section 1797.224 is required" and that, instead, County Defendants' submission of the RFP to the State Authority was "voluntary." (County Br., at 40-41). They then suggest that because submission of the RFP was not compulsory, there could be no violation of the EMS Act, regardless of their disavowal of the competitive process that the Act demands.

The requirements of section 1797.224 are unmistakable: "A local EMS agency which elects to create one or more exclusive operating areas in the development of a local plan ***shall develop and submit for approval to the authority***, as part of the local EMS plan, its competitive process for selecting providers and determining the scope of their operations." (emphasis added). There is no rational basis to interpret this provision as anything other than a clear mandate that a local EMS agency's proposed competitive process for selecting an exclusive provider *must* receive prior approval from the State Authority. And, upon receiving this approval, an exclusive provider shall be selected "pursuant to the plan" authorized by the State Authority. §1797.224.

Here, County Defendants concede that the RFP constituted their competitive process for selecting the County's new exclusive provider. (County Br., at 9). They

further concede that the RFP was submitted to the State Authority for approval. (*Id.* at 10). Once the RFP was approved by the State Authority, County Defendants were thereafter duty bound to follow it.

To avoid this inevitable conclusion, County Defendants cite to their 2023 local EMS plan, currently under review by the State Authority, as proof that the already-approved RFP is "separate and apart from … the EMS plan," and that therefore, "the statutory process for reviewing the competitive process … has not yet begun." (*Id.* at 42). County Defendants' assertion that only their local EMS plan is subject to pre-approval by the State Authority, and not the RFP itself, defies the statute's plain text, which makes clear that a local EMS agency's proposed competitive process is "part of the local EMS plan" that must be approved by the State Authority. §1797.224. The fact that the RFP was approved separately from the local EMS plan does not mean that it is not still part of that plan.

But the absurdity of County Defendants' position is exposed by actually accepting their premise that the RFP was *not* part of their EMS plan (notwithstanding the EMS Act's express language to the contrary). If State approval of the RFP was not required prior to awarding the contract to CONFIRE, as County Defendants now contend, then they have once again admitted they were not operating pursuant to *any* State policy at all. And if they were not operating pursuant to *any* State policy, it is axiomatic that County Defendants cannot be

22

entitled to *Parker* immunity. Thus, far from helping them, County Defendants' novel argument further confirms the illegality of their actions.

> **(b)    County Defendants' Contract Award to CONFIRE Cannot Be Reconciled with the Text of the RFP**

The RFP provides that "[the] contract will be awarded based on the highest scoring proposal received." (4-ER-707, §2.13E). This is an unambiguous requirement that County Defendants blatantly ignored by awarding the contract to the lower scoring bidder, CONFIRE, and that they continue to ignore by audaciously claiming that "[t]he RFP does not require the highest scoring proposal to win." (County Br., at 44). But County Defendants' attempted rationalizations simply cannot change the plain language of the RFP, which *required* the County to negotiate with and ultimately award the contract *only* to the highest-scoring bidder, i.e., AMR. (4-ER-706–707, §2.13).

And, to be clear, County Defendants have always known that the RFP means what it says—which is precisely why they decided to eschew it altogether in favor of their local procurement policies. They acknowledged as much during the evaluation process by proclaiming that "the competitive terms approved [by] the State EMS Authority pursuant to H&S Code section 1797.224 … [do] not contravene the exclusive jurisdiction of the county's board of supervisors" (4-ER-844). They acknowledged it again when the Board tried to justify voting to award the contract to CONFIRE by asserting that the County's procurement policies

allowed the Board to make its own "best value evaluation" (3-ER-321, 138:7–13). And then they acknowledged it once more in the trial court proceedings below and in the instant appeal by citing extensively to those same procurement policies. (*See, e.g.*, County Br., at 14-15). If awarding the exclusive contract to CONFIRE could be rationalized by the plain language of the RFP alone, then there would be no need for County Defendants to rely on their own local enactments rather than the competitive process mandated under the EMS Act.

The aforementioned conduct demonstrates that County Defendants were well aware that their decision to award the exclusive contract to CONFIRE finds no support in the RFP. By nevertheless electing to sidestep this State-mandated process entirely, County Defendants transcended the confines of the EMS Act, and consequently, moved outside the scope of state-action immunity under the federal antitrust laws.

**B.    CONFIRE's Arguments Are Also Unavailing**

In its Answering Brief, CONFIRE makes two primary arguments: (1) that County Defendants' conduct is immunized because "the EMS Act is a clearly articulated and affirmatively expressed state policy to displace competition in the field of EMS and ambulance services" and County Defendants' actions "were undertaken pursuant to their authority under the EMS Act to plan their EMS system and regulate and contract for EMS and ambulance services on an

24

anticompetitive basis"; and (2) that AMR cannot establish an antitrust injury. (See CONFIRE Br., at 12-15.) Both arguments fatally misconstrue AMR's arguments, as well as the statutory and case law authority on which they rely.

    **1.**    **County Defendants' Actions Are Not Entitled To *Parker* Immunity**

        **(a)**    **CONFIRE's Arguments Regarding the "Purpose and Application" of the *Parker* Doctrine Are Unavailing**

CONFIRE's first argument regarding the alleged "purpose and application" of the *Parker* doctrine misconstrues and misstates AMR's position, and then responds to its own mischaracterizations of AMR's arguments rather than AMR's actual arguments. For example, CONFIRE repeatedly asserts that AMR is advocating a position where *Parker* immunity requires "strict compliance" with the RFP's requirement, and as such, requires this Court to "closely examine and construe state statutes to resolve *Parker* immunity questions." (CONFIRE Br., at 30.) This argument entirely misses the point. County Defendants' actions violate a much more fundamental threshold requirement of *Parker* immunity—that the action at issue has to be one authorized by the *State*, in its sovereign capacity. If, instead, the action is one of a county purporting to act as a sovereign in its own right—as here—the county may not take advantage of *Parker* immunity. Thus, the key inquiry is whether the actions of County Defendants can properly be characterized as actions of the State of California, such that they should be

25

immunized. That inquiry is squarely within a federal court's purview in considering whether a substate entity is entitled to *Parker* immunity and does *not* require the Court to conduct "an 'in-depth substantive review' of the EMS Act in applying the clear articulation test." (CONFIRE Br., at 30.)

As set forth fully in AMR's Opening Brief and discussed above, the County itself has repeatedly admitted that it relied on *its own procurement policies*—in lieu of the State-approved RFP—to award a contract to CONFIRE. Indeed, the County has gone as far as to say that, notwithstanding the plain language of the EMS Act, it did not even need to obtain approval of its proposed competitive process from the State, and once approved, was under no obligation to adhere to the approved process. Thus, far from requiring this Court to conduct an exhaustive review of state law, the Court need look no further than the admissions County Defendants made throughout the RFP process, and which they have continued to make to the trial court and before this Court. It is difficult to envision a clearer case of a county purporting to act as a sovereign in its own right such that it cannot be entitled to state-action immunity.

Also unavailing is CONFIRE's reliance on *Traweek*, 920 F.2d at 591. In *Traweek*, the Ninth Circuit held that in determining whether state action immunity applies, federal courts need not consider the legality of a particular ordinance under state law. *Id.* at 593. Thus, in that case, the court rejected "appellants' invitation to

look behind California's general grant of zoning power to municipalities," stating that "[t]he Supreme Court has made clear that an in-depth substantive review of a statute to determine the legislature's intent is not appropriate." *Id.* But a full reading of that case shows that its holding is limited to examining the question of whether state action immunity hinges on an ordinance otherwise being found to be compliant with state law—an argument AMR did not raise in the instant case. Indeed, AMR takes no issue with the legality of the RFP. On the contrary, AMR is arguing that it was only by *adhering* to the RFP's mandates—rather than blatantly ignoring them entirely—that County Defendants' actions would have been entitled to immunity under *Parker*.

Finally, CONFIRE makes many of the same incorrect contentions regarding *Boone* and *Llewellyn* as County Defendants, which have been addressed *supra*. In addition, CONFIRE asserts that "[a]nalyzing a municipal defendant's implementation of state laws would necessarily intrude on the States' regulatory programs contrary to *Omni*, *Llewellyn*, *Boone*, and *Traweek*." (CONFIRE Br., at 32.) Thus, CONFIRE advances the position that a federal court can never inquire into the actions of a municipal entity to determine whether these actions were actually authorized by state law because such inquiry would "intrude the States' regulatory programs." However, it is difficult to imagine how a federal court could ever assess the first prong of the clear articulation test, which requires courts to

27

consider "whether the regulatory structure which has been adopted by the state has specifically authorized the conduct alleged to violate the Sherman Act," if CONFIRE were correct. *Cost Mgmt. Servs., Inc..*, 99 F.3d at 942. Indeed, CONFIRE's argument would render the first prong of the clear articulation test obsolete as courts could never inquire whether a particular action was actually authorized by a state in its sovereign capacity such that a non-sovereign actor should be entitled to state-action immunity. CONFIRE's position, therefore, should be rejected as contrary to settled Supreme Court and Ninth Circuit precedent regarding *Parker* immunity.

> **(b)** **CONFIRE's Attempt to Carve Out a Broad Exception to Section 1797.224 For Fire Departments Finds No Support in the EMS Act**

After first taking this Court on a meander through other California statutes to argue that section 1797.224 is not the only statute which allows for exclusive contracting, CONFIRE concedes that a County that elects to create an exclusive operating area ("EOA") "must obtain [the State Authority's] approval." (CONFIRE Br., at 37.) Because that is precisely the factual scenario in which the instant case arises, CONFIRE's reference to other statutes allowing for exclusive contracting is nothing more than attempted misdirection.

Next, CONFIRE asserts that "AMR also has a blinkered understanding of the EMS Act" because it "overlooks Section 1797.230 and 1797.231," which

CONFIRE contends carve-out a broad exception to section 1797.224's requirements for fire agencies. (CONFIRE Br., at 37.) This argument, and the tortured statutory construction on which it is based, is confounding. Section 1797.230(a)(1) simply provides that "[a] county may contract for emergency ambulance services with a fire agency that will provide those services, in whole or in part, through a written subcontract with a private ambulance service." CONFIRE asserts that this language somehow "is properly construed to authorize Defendants to award the exclusive Contract to Defendants *without engaging in competitive bidding*." (CONFIRE Br., at 40) (emphasis in original).) In other words, according to CONFIRE, a statute concerning a fire agency's ability to provide emergency ambulance services to a county "in whole or in part, through a written subcontract with a private ambulance service" singlehandedly redefined the EMS Act by carving out a massive exception to section 1797.224's well-settled requirements for the creation of EOAs and granting of exclusive ambulance contracts. §1797.230. This construction is plainly absurd.

Both the Supreme Court and this Court have stated "time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012). Thus, because "statutory interpretation begins with the statutory text, … [i]f the statutory

language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry must cease." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) (citations omitted).

Here, the plain language of section 1797.230 is clear and unambiguous—and is consistent and coherent with the EMS Act's overall statutory scheme. Section 1797.230 simply stands for the proposition that a fire agency contracting to provide ambulance services to a county may do so through a private subcontractor. In no way is this an endorsement that counties may create EOAs and award contracts for EOAs to fire agencies without adhering to the requirements of section 1797.224. Indeed, we need not speculate on this point—the legislature explicitly confirmed as much *repeatedly* within the plain language of section 1797.230 itself. Section 1797.230(a)(2) states that "[t]his subdivision is declaratory of existing law regarding a county's powers and authority to contract for emergency ambulance services." Section 1797.230(f) then states that this section "shall not alter, modify, abridge, diminish, or enlarge the requirements for creating, establishing, or maintaining an exclusive operating area under Section 1797.224." Thus, section 1797.230 did not purport to change the EMS Act—as CONFIRE contends—and certainly did not alter the requirements of section 1797.224. Rather, it was merely declaratory of existing law, and was passed solely to preserve a fire agency's

ability to subcontract with private ambulance companies.[3] CONFIRE's assertion that, notwithstanding its multiple explicit declarations to the contrary, section 1797.230 marked a monumental sea change by providing a *per se* exemption from competitive bidding for fire agencies, is remarkably unfounded.

## 2. AMR Has Properly Alleged An Antitrust Injury

CONFIRE's second argument is that the Court should "affirm on the alternative ground that AMR cannot establish its Section 1 claim." (CONFIRE Br., at 47.) However, CONFIRE responds to an imagined factual context not implicated by AMR's Complaint, while ignoring the wealth of case law from this jurisdiction discussing the exact statutory scheme and factual scenario that actually is at issue in the Complaint.[4]

---

[3] The statute's legislative history provides additional confirmation of its limited scope. The bill was intended to "guarantee[] that counties can continue to utilize proven effective subcontracting partnerships and allow counties to develop and utilize similar subcontracting systems in the future." California Bill Analysis, A.B. 389 Assem., 2/2/2021. But the legislature repeatedly confirmed that "AB 389 does not alter and has no effect on existing law that requires a public competitive bidding process, including requests for proposals, for the awarding of any emergency ambulance services contract." California Assembly Journal, 2021-2022 Reg. Sess., No. 121.

[4] To the extent that the Court agrees with CONFIRE that the allegations in AMR's Complaint are insufficient to adequately assert antitrust injury, any deficiency in the Complaint is not fatal and can be cured through amendment. Thus, the Court should remand to allow AMR to file an amended complaint.

In enacting the EMS Act generally and section 1797.6 specifically, the California Legislature recognized that a municipality engaging in exclusive ambulance contracting necessarily raises antitrust concerns. *See Mercy-Peninsula,* 791 F.2d at 758 ("[T]he California Legislature has realized that the EMS Act reduces competition among providers of emergency medical services and might generate antitrust litigation."). That the Legislature felt it necessary to enact legislation to confer state action immunity on this type of contracting is, in itself, powerful evidence that *absent* the state's grant of immunity, a municipality's engagement in exclusive ambulance contracting may run afoul of antitrust laws.

Not surprisingly, then, both state and federal courts have recognized that exclusive ambulance contracting does, in fact, raise antitrust issues absent *Parker* immunity. *See, e.g., A-1 Ambulance Service, Inc. v. County of Monterey,* 90 F.3d 333, 335–36 (9th Cir. 1996) ("The County's RFP would restrain trade by allowing only one ALS ambulance service provider to operate in the [area]."); *Schaefer's Ambulance Serv. v. Cnty. of San Bernardino*, 68 Cal.App.4th 581, 590 (1998) ("The purpose of creating exclusive operating areas is to eliminate competition."); *Valley Med. Transp., Inc. v. Apple Valley Fire Prot. Dist.*, 17 Cal.4th 747, 759 (1998) ("[A]n EOA permits local EMS agencies to offer private emergency service providers protection from competition…."). CONFIRE would have this Court believe that these courts were engaging in nothing more than a gratuitous exercise

when analyzing whether a particular ambulance services contract ran afoul of antitrust law.

Ignoring this immense body of case law concerning the exact statute and factual scenario at issue, CONFIRE directs the court to an irrelevant case concerning general "procurement" law for the unremarkable assertion that a violation of competitive bidding laws does not *necessarily* constitute a violation of the Sherman Act. *See Security Fire Door Co. v. Los Angeles Cnty.*, 484 F.2d 1028, 1030 (9th Cir. 1973). *Security Fire Door* concerned a bid for a construction contract. Plaintiff alleged that, in drafting the specifications for the project, the County deliberately favored a single dumbwaiter manufacturer, while discriminating against other dumbwaiter manufacturers—even though the specifications appeared neutral on their face. *Id.* In dismissing plaintiff's antitrust lawsuit, the Ninth Circuit explained that purchasers are generally free to choose the products they desire, and "[t]he proscription against restraint of trade in this context seeks only to assure that the choice of product has been made freely under circumstances where the play of competition has been available." *Id.* The Court reasoned that "the choice of product by the purchaser, Los Angeles County, was expressed in the specifications" and there was "nothing alleged in the complaint to suggest that this choice was made *other than in an atmosphere of free competition* among suppliers. So far as the complaint alleges, each supplier was perfectly free

to tout the virtues of his particular dumbwaiter system in an effort to secure favorable specifications." *Id.* (emphasis added). Thus, the court found the plaintiff had insufficiently pleaded an antitrust violation. *Id.*

The differences between *Security Fire Door* and the instant case are myriad and obvious; indeed, it is difficult to find relevant points of comparison between the two. Most importantly, while both the specifications in *Security Fire Door* and the RFP in the instant case set forth criteria for the preferred and most qualified product (i.e., ambulance services), unlike the *Security Fire Door* plaintiff, AMR is not contending that the RFP's criteria were improper or unfairly weighted towards a particular provider. Rather, AMR's contention is that despite being the highest scorer *under the RFP criteria*—and thereby being determined to have the best product under those criteria—County Defendants unilaterally overruled this determination and instead chose to rely on their local procurement policies to award the contract to their politically-preferred provider (CONFIRE). Even under the *Security Fire Door* court's rationale, this violates antitrust law because "[t]he proscription against restraint of trade in this context seeks [ ] to assure that the choice of product has been made freely under circumstances where the play of competition has been available." *Id.* AMR has pleaded the prototypical scenario where the "play of competition" (i.e., the state-mandated competitive process) was explicitly and unfairly impeded to achieve an anticompetitive goal—awarding an

exclusive contract to an unqualified and inferior ambulance provider for politically motivated reasons.

Finally, CONFIRE's argument that AMR "alleges injury to itself but does not allege injury to competition or to consumers" (CONFIRE Br., at 52-53), once again misses the mark. Contrary to CONFIRE's contentions, County Defendants' unlawful actions harm the "consumers" of ambulance services—the citizens of San Bernardino County. Indeed, within the context of the EMS Act, the only lawful way for a County to enter into an exclusive dealing contract that restrains trade by eliminating competition from alternative service providers is by adhering to the State-approve competitive process and awarding a contract to the provider determined to be most qualified under that process. This guarantees, to the extent possible, that the "exclusive deal" was subjected to, and the result of, an open and fully competitive process, protecting both competition and consumers from anticompetitive injury. It is County Defendants' repudiation of this State-approved competitive process, and the decision to instead award a monopoly to their politically-preferred provider, that harmed consumers and competition at large. Thus, in addition to AMR, the victims of County Defendants' unlawful actions are the citizens of San Bernardino County, and, as such, AMR has properly alleged an antitrust injury.

### III.
### <u>CONCLUSION</u>

For the foregoing reasons, AMR respectfully requests that this Court reverse the District Court's Order dismissing AMR's antitrust cause of action, and remand the case back to the District Court for consideration of AMR's antitrust cause of action on the merits.

Dated:  November 20, 2024      LARSON LLP


By:  */s/ Stephen G. Larson*
       Stephen G. Larson
       Jonathan E. Phillips
       Mehrunisa Ranjha
       Benjamin Falstein

       Attorneys for Plaintiff and Appellant
       American Medical Response of Inland Empire

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a) and Cir. Rule 32-1, I certify that the

attached brief is proportionally spaced, has a typeface of 14 points and contains

6,970 words.

Dated:  November 20, 2024          LARSON LLP


By:   */s/ Stephen G. Larson*
      Stephen G. Larson
      Jonathan E. Phillips
      Mehrunisa Ranjha
      Benjamin Falstein

      Attorneys for Plaintiff and Appellant
      American Medical Response of Inland Empire