Case No. 24-3195

**United States Court of Appeals**
**for the Ninth Circuit**

AMERICAN MEDICAL RESPONSE OF INLAND EMPIRE,
*Plaintiff and Appellant*,

v.

COUNTY OF SAN BERNARDINO, COUNTY OF SAN BERNARDINO BOARD OF SUPERVISORS, and INLAND COUNTIES EMERGENCY MEDICAL AGENCY,
*Defendants and Appellees*;

and

CONSOLIDATED FIRE AGENCIES
*Real Party in Interest.*

On Appeal from The United States District Court,
Central District of California,
Case No. 5:24-cv-00267-KK-SP,
Hon. Kenly Kiya Kato

# MOTION TO STAY MANDATE PENDING SUPREME COURT REVIEW

**LARSON LLP**
Stephen G. Larson
*slarson@larsonllp.com*
Jonathan E. Phillips
*jphillips@larsonllp.com*
Mehrunisa Ranjha
*mranjha@larsonllp.com*
Benjamin Falstein
*bfalstein@larsonllp.com*
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Tel: (213) 436-4888; Fax: (213) 623-2000

*Attorneys for Plaintiff and Appellant*
*American Medical Response of Inland Empire*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................ 5

II. BACKGROUND ........................................ 8

III. LEGAL STANDARD ........................................ 9

IV. REASON TO STAY THE MANDATE ........................................ 9

A. AMR's Petition Will Present Substantial Questions of Law ........................................ 9

1. The Panel's Decision Tests the Outer Limits of *Parker* Immunity ........................................ 9

2. The Panel's Decision Raises Substantial Questions Regarding the Expansion of the Ninth Circuit's "Imperfect Execution" Doctrine ........................................ 14

B. There Is Good Cause for a Stay ........................................ 19

V. CONCLUSION ........................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Boone v. Redevelopment Agency of City of San Jose*,
841 F.2d 886 (9th Cir. 1988) ........................................................*passim*

*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*
445 U.S. 97 (1980)........................................................................10, 11, 13, 16

*Cantor v. Detroit Edison Co.*,
428 U.S. 579 (1976)...........................................................................................9

*Chamber of Com. of the U.S. v. City of Seattle*,
890 F.3d 769 (9th Cir. 2018) ........................................................................10

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*,
810 F.2d 869 (9th Cir. 1987) ..................................................................15, 16

*Columbia Steel Casting Co., Inc. v. Portland General Elec. Co.*,
111 F.3d 1427 (9th Cir. 1996) ......................................................................18

*Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*,
99 F.3d 937 (9th Cir. 1996) ..........................................................................17

*F.T.C. v. Phoebe Putney Health Sys., Inc.*,
568 U.S. 216 (2013)........................................................................10, 12, 16, 17

*F.T.C. v. Ticor Title Ins. Co.*,
504 U.S. 621 (1992).........................................................................................10

*Goldfarb v. Virginia State Bar*,
421 U.S. 773 (1975).........................................................................................10

*Llewellyn v. Crothers*,
765 F.2d 769 (9th Cir. 1985) ..........................................................14, 15, 18, 19

*Parks v. Watson*,
716 F.2d 646 (9th Cir. 1983) ..........................................................................17

*Sanders v. Brown*,
504 F.3d 903 (9th Cir. 2007) ....................................................................15, 16

*Town of Hallie v. City of Eau Claire*
471 U.S. 34 (1985)....................13

*United States v. Pete*,
525 F.3d 844 (9th Cir. 2008)....................9

**California Cases**

*Schaefer's Ambulance Service v. County of San Bernardino*,
68 Cal.App.4th 581 (1998)....................21

**California Statutes**

Cal. Health & Safety Code
§ 1797.6(b)....................21

**Other Authorities**

9th Cir. R. 41-1....................9

Fed. R. App. P. 41(d)(1)....................5, 9

Pursuant to Rule 41(d)(1) of the Federal Rules of Appellate Procedure, Appellant American Medical Response of Inland Empire ("AMR") respectfully requests that this Court stay the mandate in this appeal pending the filing of AMR's petition for a writ of certiorari in the Supreme Court.

## I. INTRODUCTION

Contrary to Supreme Court precedent repeatedly cautioning that *Parker* immunity is a disfavored and narrow exception to antitrust liability, this panel's decision affirming the dismissal of AMR's antitrust cause of action marks another step by this Circuit toward a paradigm shift wherein such immunity is the norm rather than the exception—even for substate actors who explicitly admit they were not operating pursuant to *any* state authorization at all. The panel's holding that the County of San Bernardino ("County"), the County's Board of Supervisors, and Inland Counties Emergency Medical Agency (collectively, "County Defendants") were entitled to immunity "[e]ven if the County Defendants… awarded the contract 'in complete disregard of the state-mandated competitive process,'" presents a factual scenario that tests the outer limits of *Parker* immunity, and is therefore an ideal vehicle for Supreme Court review of this issue.

In particular, the panel's holding calls into stark question this Circuit's continued application of the Supreme Court's clear articulation test, which first requires consideration of whether the challenged monopolistic action was actually

authorized *by the state*. More specifically, it raises important questions regarding the validity of this Circuit's carve-out for a substate actor's alleged "imperfect execution" of state authority, a doctrine that this ruling elevates to a point that the exception swallows the rule. These important legal questions warrant review by the Supreme Court and, at a minimum, constitute substantial questions of law supporting issuance of a stay of this Court's mandate pending such review.

Moreover, there is good cause for a stay. County Defendants and Consolidated Fire Agencies ("CONFIRE") have already signaled their intent to leverage the panel's ruling in this case to influence (and potentially alter) the ultimate ruling in AMR's parallel state-court litigation. If they are successful in doing so, the fate of both litigations—and, by extension, AMR's fate as an ambulance provider in the County—could be decided based on a summary decision at the motion to dismiss stage that is contrary to settled Supreme Court and Circuit precedent. AMR should be allowed to seek Supreme Court review of these meritorious legal issues before potentially being deprived of a full and fair opportunity to litigate its claims.

The panel's decision could also have far-reaching consequences beyond just AMR. For over four decades, counties throughout California have operated under the premise—based on the plain language of California's Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act

("EMS Act") and settled state and federal precedent—that they must obtain approval from the California Emergency Medical Services Authority ("State Authority") for any competitive process for awarding an exclusive ambulance contract, and that they must then adhere to that approved process in order to remain immunized from federal antitrust law. By holding that no matter what action a county takes—including *completely disregarding* and acting *entirely outside of* the State Authority's authorized competitive process—a county will nonetheless be entitled to *Parker* immunity, the Memorandum invites counties to engage in monopolistic ambulance contracting wholly untethered from any state authority whatsoever without fear that their actions will be struck down by federal courts in this Circuit. Thus, although not a published opinion, this decision could fundamentally disrupt the administration of EMS across California.

On the other hand, there is no prejudice to County Defendants or CONFIRE from a stay of the mandate. Because the panel affirmed the district court's order dismissing AMR's antitrust action, there is nothing left for the district court to do upon issuance of the mandate. As such, staying that mandate while AMR pursues Supreme Court review will have zero impact on County Defendants and CONFIRE. Accordingly, the balance of equities tips heavily in favor of a stay.

For these reasons, and as set forth more fully below, issuance of the mandate should be stayed.

## II.
## BACKGROUND

AMR filed its Complaint on February 2, 2024, asserting a claim under Section 1 of the Sherman Antitrust Act on the grounds that County Defendants acted outside of the scope of the EMS Act's regulatory scheme in awarding an exclusive ambulance services contract to CONFIRE. (4-ER-673–77, ¶¶ 72–84).

On April 19, 2024, the district court granted Motions to Dismiss, finding that AMR's Sherman Act claim was subject to *Parker* immunity and declining to exercise supplemental jurisdiction over AMR's pendant state law claims. (1-ER-12.) The district court made no factual findings regarding the RFP, instead determining that "even accepting Plaintiff's allegations that County Defendants deviated from the competitive process approved by the [the State Authority] as true, the failure to properly adhere to the RFP's requirements does not exclude County Defendants from state-action immunity." (1-ER-9.).

AMR timely filed its Notice of Appeal on May 17, 2024. The panel issued the Memorandum on April 30, 2025, holding that "[e]ven if the County Defendants… awarded the contract 'in complete disregard of the State-mandated competitive process' as AMR alleges, the County Defendants are still entitled to *Parker* immunity." (Mem.Disp.5). On June 10, 2025, the Court denied AMR's Petition for Panel Rehearing and Rehearing *En Banc*. (Dkt. 50.)

## III.
## LEGAL STANDARD

Federal Rule of Appellate Procedure 41(d)(1) permits the Court to stay the issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari upon the applicant's showing "that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The Court's standard for granting such a stay is lenient. *See* 9th Cir. R. 41-1 ("[A] motion for stay of mandate . . . will not be granted as a matter of course, but will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay.") As such, the Court "often" stays the mandate pending certiorari, as parties "need not demonstrate that exceptional circumstances justify a stay." *United States v. Pete*, 525 F.3d 844, 851 & n.9 (9th Cir. 2008) (quoting *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528–29 (9th Cir. 1989)).

## IV.
## REASON TO STAY THE MANDATE

### A. AMR's Petition Will Present Substantial Questions of Law

#### 1. The Panel's Decision Tests the Outer Limits of *Parker* Immunity

The panel's holding raises important questions about the limits of *Parker* immunity, which the Supreme Court has repeatedly characterized as a *narrow exception* to federal antitrust liability. *See Cantor v. Detroit Edison Co.*, 428 U.S. 579, 579 (1976). Indeed, "given the antitrust laws' values of free enterprise and economic competition, 'state-action immunity is disfavored,' … and is recognized

only when it is clear that the challenged anticompetitive conduct is undertaken pursuant to the 'State's own' regulatory scheme." *F.T.C. v. Phoebe Putney Health Sys., Inc.,* 568 U.S. 216 (2013) (quoting *F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621, 636 (1992)); see also *Chamber of Com. of the U.S. v. City of Seattle*, 890 F.3d 769, 781 (9th Cir. 2018) ("State-action immunity is the exception rather than the rule.").

"The threshold inquiry in determining if an anticompetitive activity is state action of the type the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 790 (1975); *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980) [the anticompetitive policy must be (1) "clearly articulated and affirmatively expressed as state policy;" and (2) "actively supervised by the state itself."].) This is because "[s]tates must accept political responsibility for actions they intend to undertake" and "[i]t is quite a different matter [ ] for federal law to compel a result that the States do not intend but for which they are held to account." *Ticor*, 504 U.S. at 636. The Supreme Court's "insistence on real compliance with . . . the *Midcal* test serves to make clear that the States are responsible for only [the anticompetitive conduct] they have sanctioned and undertaken to control." *Id.*

Here, the panel gave short shrift to the *Midcal* test, and no consideration whatsoever to whether the actions at issue could fairly be characterized as actions of the state of California in its sovereign capacity. As the panel characterized it, AMR's challenge was only that "the RFP required the County Defendants to award the monopoly to the provider that received the 'highest score.'" (Mem.Disp.4). The panel then disagreed, concluding that, at most, County Defendants merely "imperfectly exercise[d] [their] power under state law" and were therefore still entitled to *Parker* immunity. (*Id.* at 5 (citing *Boone*, 841 F.2d 886, 891)).

But AMR's appeal was *not* premised simply on the fact that it should have been awarded the contract after receiving the highest score, and that County Defendants improperly applied their authority under the RFP by instead awarding the contract to CONFIRE. Rather, the actual premise of this appeal is that County Defendants recognized that the RFP did *not* authorize their contract award to CONFIRE, and for that reason abandoned the RFP and the state's authority altogether. As demonstrated by the record below, County Defendants *conceded* that AMR "received the highest score" and that they were therefore obligated to recommend only AMR for contract award "as stated in the RFP." (4-ER-833). Facing this reality—but not liking the results—County Defendants chose to completely disavow and abandon the competitive process required by the EMS Act and approved by the State Authority, instead pivoting to their own *separate*

process using their own *locally-enacted* procurement policies. (Dkt. 10.1, 33-35).

Time and again, County Defendants confirmed that they were not acting pursuant to the EMS Act at all—nor the RFP approved thereunder—but were in fact acting pursuant to their own local procurement policies, which are wholly extraneous to the state's statutory framework. (Dkt. 25.1 at 15, 43). County Defendants have gone as far as to assert that they were not even required to obtain state approval of the RFP prior to granting an exclusive ambulance contract, and could instead grant the contract pursuant to their own general police powers. (*Id.* at 10, 41). However, exercising local police powers or the authority granted by a county's local procurement policies does not confer *Parker* immunity. Rather, County Defendants' conduct would be immunized only by exercising the authority granted *by the state* through the EMS Act. *Phoebe Putney*, 568 U.S. at 226 ("[I]mmunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition."). Put simply, AMR's allegation is not that County Defendants failed to comply with the RFP—i.e., that they "imperfectly exercise[d]" state policy—rather, the issue here is that County Defendants were not exercising any state policy at all. *Boone,* 841 F.2d at 891.

By holding that "[e]ven if the County Defendants … awarded the contract 'in complete disregard of the State-mandated competitive process' as AMR

alleges, the County Defendants are still entitled to *Parker* immunity," the panel disregarded the key component of the *Midcal* test—that the action at issue be taken pursuant to a "clearly articulated" ***state*** policy. (Mem.Disp.5). As the Supreme Court has recognized, *Parker* immunity's "requirement that the municipality act pursuant to a clearly articulated state policy" protects against the "real danger" that a municipality "will seek to further purely parochial public interests at the expense of more overriding state goals." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1985); see also *City of Boulder*, 455 U.S. at 53 (Ours is a *dual* system of government, . . . which has no place for sovereign cities.") (emphasis in original) (internal quotations omitted)).

That "danger" has become reality in this case, and thus the panel's finding that a substate entity can "complete[ly] disregard" the authorization of the state and still be entitled to *Parker* immunity flies in the face of both the letter and the spirit of binding Supreme Court precedent. Indeed, it transforms *Parker* immunity from a *narrow* and *disfavored exception* into a far-reaching *rule* that substate entities may use liberally to advance their own local interests while undermining the values of free enterprise and economic competition. Accordingly, this case raises substantial questions regarding the outer limits of *Parker* immunity, making it particularly appropriate for Supreme Court review.

### 2. The Panel's Decision Raises Substantial Questions Regarding the Expansion of the Ninth Circuit's "Imperfect Execution" Doctrine

Relatedly, this decision also raises the question of whether the Ninth Circuit's expansion of its "imperfect execution" doctrine can be squared with Supreme Court precedent on *Parker* immunity—particularly given how far the panel has stretched that doctrine here.

As did the district court in originally dismissing AMR's complaint, the panel relied on two Ninth Circuit cases—*Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985) and *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 891 (9th Cir. 1988)—to assert that a state's "imperfect" execution of its powers "under its own law" is not sufficient to strip it of *Parker* immunity. (Mem.Disp.5 (citing *Boone*, 841 F.2d 886, 891)). The Supreme Court has never recognized such an "imperfect execution" exception to the clear articulation test. And there certainly is no Supreme Court precedent for how that doctrine has been applied here. The instant case does not even involve a *state* "imperfectly" executing its *own* powers under its *own* laws; rather, it presents a situation wherein a *substate* entity was admittedly not acting pursuant to any state law or policy—yet was still found by the panel to be entitled to *Parker* immunity. As such, the panel's decision represents an even further expansion of the imperfect execution doctrine (which itself may be at odds with Supreme Court precedent) to the point that *Parker* immunity becomes the rule rather than a narrow exception.

The "imperfect execution" rule was first announced in *Llewellyn*. There, the Court held that actions taken by the Oregon Workers' Compensation Department ("OWCD")—a state agency—were the "actions of the State of Oregon in its sovereign capacity." *Llewellyn*, 765 F.2d at 773. As such, the state agency did not forfeit the protection of *Parker* immunity "merely because the state's attempted exercise of its power is imperfect in execution under its own law." *Id.* at 774. Applying this standard, the Court found that the OWCD had authority under state law to take the specific action complained of—setting rates for chiropractic services—and even using this authority erroneously did not strip it of state-action immunity. *Id.* at 773. Thus, the *Llewellyn* Court found that even where a state agency imperfectly executes state policy, this does not strip it of *Parker* immunity because a state agency's "imperfect" actions are still, ultimately, actions of the *state* in its sovereign capacity.

In two cases decided after *Llewellyn*—*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 876 (9th Cir. 1987) and *Sanders v. Brown*, 504 F.3d 903, 916 (9th Cir. 2007)—this Circuit solidified its view that the clear articulation test does *not* apply to state executives and agencies. In *Charley's Taxi*, this Court explained: "We conclude that state executives and executive agencies, like the state supreme court, are entitled to *Parker* immunity for actions taken pursuant to their constitutional or statutory authority, regardless of whether these

particular actions or their anticompetitive effects were contemplated by the legislature. The requirement of specific authorization that we impose on cities to qualify for *Parker* immunity is not appropriate for the executive branch of the state government. When the state executives or executive agencies act within their lawful authority, their acts are those of the sovereign." *Charley's Taxi,* 810 F.2d at 876; *see also Sanders,* 504 F.3d at 915-16 (explaining that "in cases where the state, acting as a sovereign, imposes restraints on competition" the state is "immune from antitrust liability, regardless of whether the restraint in question would satisfy the *Midcal* test."[1]).

Of course, the same cannot be said where a *municipality* or other *substate entity* seeks to take advantage of state-action immunity. Unlike a state, "municipalities and other political subdivisions are not themselves sovereign" and "state-action immunity under *Parker* does not apply to them directly." *Phoebe*

---

[1] The *Sanders* court also recognized a Circuit split on this issue, explaining: "In so holding, we recognize that we disagree with two other circuits. The Second Circuit in *Freedom Holdings* and the Third Circuit in *Bedell* applied the *Midcal* analysis and held that *Parker* immunity does not protect the state from liability for entering into the MSA. *Freedom Holdings,* 357 F.3d at 226–32; *Bedell,* 263 F.3d at 259–66. As discussed above, however, we believe the *Midcal* analysis would only be appropriate if the MSA is not a sovereign act, which we conclude it is." *Sanders*, 504 F.3d at 918. Accordingly, even though not directly at issue here, the questions AMR plans to raise in its petition to the Supreme Court are critically intertwined with an issue upon which the Circuit courts are split. This further weighs in favor of granting a stay of the mandate.

*Putney Health Sys., Inc.*, 568 U.S. at 225. "[I]mmunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *Id.* at 226 (quoting *City of Boulder*, 455 U.S. at 52). As such, in considering whether the activities of a substate entity such as a county were undertaken pursuant to a clearly articulated and affirmatively expressed state policy, a court must first consider whether the "regulatory structure which has been adopted by the state has specifically authorized *the conduct alleged to violate the Sherman Act*." *Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*, 99 F.3d 937, 942 (9th Cir. 1996) (emphasis added); *see also Parks v. Watson*, 716 F.2d 646, 663–64 (9th Cir. 1983) ("[M]erely demonstrating a state policy to displace competition with monopoly public service does not necessarily satisfy the additional requirement that the legislature contemplate the kind of action complained of.").

Nevertheless, in *Boone*, the imperfect execution doctrine was expanded to substate entities. *Boone,* 841 F.2d at 891 (concluding that despite a city council's erroneous determination regarding eligibility under a state redevelopment act, "it does not follow that the city and agency would be stripped of antitrust immunity merely because they imperfectly exercise their power under state law"). While *Boone's* extension of *Llewellyn's* imperfect execution doctrine was arguably at

odds with the Supreme Court's careful distinction between state and substate actors in the context of *Parker*, at least *Boone* thoroughly analyzed and applied the "clear articulation" test to first find that the city and city agency were in fact acting *pursuant to* a "clearly articulated and affirmatively expressed" state policy, albeit "imperfectly."

*Llewellyn* and *Boone* have not been extensively cited in this Circuit in the nearly four decades since they were first published.[2] More importantly, AMR can find no other cases in which this line of precedent has ever been applied as expansively as in the instant case. The panel's decision here—that even County Defendants' "complete disregard" of the state's policy would not cause them to lose antitrust immunity— essentially moots the "clear articulation" requirement. What started as a recognition that a state's "imperfect" execution of its own authority nonetheless remained a state's sovereign action, has morphed to the point

[2] In one of the few instances where *Llewellyn's* imperfect execution doctrine was previously cited by this Circuit, this Court found that that *Llewellyn* was inapposite because the state agency "did not clearly exercise its statutory authority to approve the allocation of exclusive service territories in Portland; indeed, it did not speak to the issue at all. So rather than exercising its authority 'imperfectly,' the OPUC failed altogether to exercise its authority to approve exclusive service territories with any clarity whatsoever." *Columbia Steel Casting Co., Inc. v. Portland General Elec. Co.*, 111 F.3d 1427, 1439 (9th Cir. 1996). The facts presented in *Columbia Steel* are much more closely analogous to the instant case than the facts of either *Llewellyn* and *Boone*, further demonstrating that the panel's decision is contrary to even this Circuit's own precedent.

that substate entities can act pursuant to their own separate procedures and local authority *in place of* the state's authorization.

In other words, the panel's holding did not just apply the *Llewellyn* and *Boone* line of precedent, it extended it beyond all recognition—and in doing so, rendered the state's authorization entirely irrelevant. If this is indeed the standard (or lack thereof) that substate entities are to be held to, then the clear articulation test is truly obsolete. It no longer matters whether a substate agency's action can fairly be characterized as an action authorized by the state if that state authorization can be "complete[ly] disregard[ed]" yet the substate actor's conduct remains immunized from antitrust liability. Because such a result is fundamentally at odds with settled Supreme Court precedent, as well as the Circuit precedent it purports to follow, there are substantial issues of law warranting a stay of the mandate pending Supreme Court review.

**B. <u>There Is Good Cause for a Stay</u>**

Because the panel's decision will have far-reaching consequences for AMR, the EMS industry at large, and the state of antitrust law in the Circuit, there is good cause to issue a stay to allow for Supreme Court review of this decision before it becomes final.

First, the finality of the decision will have immediate and prejudicial effect on AMR because, although the panel made clear its belief that "the state court may

be a more appropriate forum to litigate AMR's challenges to the County Defendants' execution and administration of the RFP," it nonetheless weighed in on factual issues that may impact AMR in the state-court action. (Mem.Disp.5). Despite this appeal being from a motion to dismiss at the pleading stage, the panel addressed the issue of "County Defendants' execution and administration of the RFP" by interpreting patently ambiguous provisions of the RFP. (*Id.*). In doing so, the panel inadvertently set up County Defendants and CONFIRE to argue that the state court is now bound by the panel's interpretation of the RFP. While AMR is confident the state court will reject any such argument, there is nevertheless at least some risk that the panel's ruling will deprive AMR of the chance to fully litigate the proper interpretation of the RFP in any forum. Equity demands that AMR have the opportunity to fully exhaust its appellate remedies and seek Supreme Court review based on the meritorious issues raised herein before such a risk could become reality.

Second, the panel's decision could also have far-reaching consequences for the administration of EMS around California. In 1984, the California Legislature declared that "the intent of the Legislature in enacting [Section 1797.6] and Sections 1797.85 and 1797.224" was "to prescribe and exercise the degree of state direction and supervision over emergency medical services as will provide for state action immunity under federal antitrust laws for activities undertaken by local

governmental entities." Cal. Health & Safety Code § 1797.6(b). For the past four decades, this statement of the state's intent has guided counties throughout California, as they have understood that "[i]f [a] County attempted to create exclusive operating areas pursuant to its general police power rather than pursuant to the Act, presumably it would fall afoul of federal antitrust law." *Schaefer's Ambulance Service v. County of San Bernardino*, 68 Cal.App.4th 581, 588 (1998).

Because the Memorandum could be misinterpreted by counties as eviscerating that long-held understanding, it could have far-reaching impact on the way counties throughout California administer their EMS systems. The panel's holding in this case—that even where a county acts "'in complete disregard of the State-mandated competitive process'" it is still entitled to antitrust immunity—could mistakenly be interpreted by counties as a signal that they need no longer bother with obtaining the State Authority's prior approval of a contemplated competitive process, that they need not adhere to any competitive process actually approved by the State Authority, and that they can ultimately award monopolistic ambulance contracts based *entirely* on their own local policies and procedures. Indeed, having received the Ninth Circuit's apparent blessing that, as far as federal antitrust law is concerned, a county is bound by nothing at all when awarding an exclusive ambulance contract, counties may mistakenly feel empowered to engage in monopolistic actions based on local police power more generally, not just for

EMS. And if counties believe they can rely on their local police powers and locally-approved policies, they will be more likely to engineer pre-ordained results in awarding anti-competitive contracts, particularly where, as here, the result of a fair competitive process is contrary to their political preferences. Such a risk of widespread consequences likewise warrants a stay of the mandate to allow for Supreme Court review.

Finally, there is no countervailing prejudice to County Defendants and CONFIRE from a stay of this Court's mandate. Because the panel's decision simply affirms the district court's dismissal of AMR's complaint, the issuance of the mandate will not change the status quo of that action. AMR's complaint will simply *continue* to remain dismissed. Thus, there is no harm to County Defendants and CONFIRE from delaying issuance of the mandate.

Given the balance of equities, AMR should be given an opportunity to exhaust all appellate remedies and seek Supreme Court review of this decision before it becomes final.

## V.
## CONCLUSION

For the forgoing reasons, the Court should stay issuance of the mandate pending AMR's filing of a petition for a writ of certiorari in the Supreme Court.

Dated: June 16, 2025

LARSON LLP

By: */s/ Stephen G. Larson*
Stephen G. Larson
Jonathan E. Phillips
Mehrunisa Ranjha
Benjamin Falstein

Attorneys for Plaintiff and Appellant
American Medical Response of Inland Empire

## CERTIFICATE OF COMPLIANCE

Pursuant to Ninth Circuit Rule 27-1, I certify that the attached brief is proportionally spaced, has a typeface of 14 points and contains 4,301 words.

Dated: June 16, 2025

LARSON LLP

By: */s/ Stephen G. Larson*
Stephen G. Larson
Jonathan E. Phillips
Mehrunisa Ranjha
Benjamin Falstein

Attorneys for Plaintiff and Appellant
American Medical Response of Inland Empire